# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

TONI HAYNES,                  §
      **Plaintiff,**           §
                              §       **No. 3:10-CV-806-B**
**v.**                            §       **SEALED**
                              §
                              §
**PATRICK R. DONAHOE, Postmaster General,[1]**     §
          **Defendant.**          §

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The Court has under consideration the Motion for Summary Judgment of Patrick R. Donahoe, Postmaster General, United States Postal Service ("Defendant"), filed July 13, 2011 ("Motion," doc. 29). The District Court referred the Motion to the United States Magistrate Judge for findings, conclusions, and recommendation. The Court has considered the responsive pleadings of Toni Haynes ("Plaintiff"), including her response, brief, appendix and surreply (docs. 31-33, 36), as well as Defendant's brief, appendix, and reply (docs. 29, 30, 35).

### Background

Plaintiff was employed by Defendant as a Supervisor, Distribution Operations, at Defendant's Dallas, Texas Processing and Distribution Center. Plaintiff claims she was initially injured on March 21, 2001 when an employee physically assaulted her by pushing her to the floor. Plaintiff filed for benefits with the Department of Labor's Office of Workers' Compensation, but the benefits were denied. Plaintiff alleges that she developed an emotional condition as a result of continual harassment by her employer, including being called into the manager's office to testify

---

[1] Patrick R. Donahoe became Postmaster General on December 10, 2010, and under Fed. R. Civ. P. 25(c), he is automatically substituted for John E. Potter as the party defendant.

about the assault, being denied medical care by cancellation of her health insurance, and being forced to work outside her medical restrictions. Plaintiff was absent from work beginning April 25, 2007, and she was on leave without pay status beginning April 23, 2008. Plaintiff complains that Defendant issued a Notice of Separation and Letter of Decision, effective September 11, 2009, because she had not worked for 12 months. She contends that instead of ending her employment, Defendant should have accommodated her by extending her leave.

## STANDARD OF REVIEW

When the facts, as evidenced in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact, summary judgment is warranted. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant has carried its initial burden, the burden shifts to the nonmovant to show that summary judgment is not appropriate. *Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must then go beyond the pleadings and designate specific facts to prove that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in her pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). When the court reviews the evidence in the record, it (1) gives credence to evidence favoring the nonmovant as well as to "evidence

supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses," and (2) disregards evidence favorable to the movant that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc*., 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc*., 5 F.3d 955, 956 (5th Cir. 1993)).

"If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co*., 948 F.2d 972, 974 (5th Cir. 1991). A court will not conclude that the nonmoving party could prove the required facts in the absence of proof. *Lynch*, 140 F.3d at 625. Further, the party opposing summary judgment must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Plaintiff's Amended Complaint (doc. 2, filed April 22, 2010) is the effective complaint in this action. Because it is unverified, it does not constitute competent summary judgment evidence. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

## Undisputed Facts

### Plaintiff's Workers' Compensation Cases

Plaintiff suffered an on-the-job injury when an employee assaulted her on March 21, 2001. (Def. App. 1, ¶ 1.) Plaintiff did not file an Equal Employment Opportunity ("EEO") complaint for this incident; rather, she filed a claim with the Office of Workers' Compensation Programs/US Department of Labor ("OWCP"). (Def. App. 40.) The OWCP accepted the claim for sprain of the neck, contusion of multiple sites, and other acute reactions to stress. (*Id*.) Plaintiff filed a claim for recurrence, but the OWCP advised Plaintiff on December 15, 2004, that the recurrence claim had

been denied and medical treatment was no longer authorized. (*Id.*) She requested reconsideration from OWCP and on May 25, 2005, reconsideration was denied. (*Id.*) Plaintiff was told that based upon the denial decision, she had no further entitlement to compensation or medical treatment. (*Id.*) OWCP also advised her that OWCP's adjudication of her compensation and medical treatment claims was final. (*Id.*)

Plaintiff filed a separate claim with OWCP for a June 4, 2003 injury. (Def. App. 40.) OWCP accepted her claim for joint derangement of the right wrist; neuralgia, neuritis, and radiculitis of the right wrist joint. (*Id.*) Plaintiff received workers' compensation benefits in the amount of $32,350.28 for June 4, 2003 through March 23, 2004. (*Id.*) Plaintiff returned on work on March 24, 2004, for four hours per day and stopped working on April 15, 2004. (*Id.*) OWCP issued a compensation order based on a refusal of a valid job offer. (*Id.*) On November 18, 2004, the order was reversed based on a decision on appeal. (*Id.*) Her case was kept open for medical care. (*Id.*)

Plaintiff returned to work, and on August 24, 2007, she filed another injury compensation claim with the OWCP, requesting continuation of pay. Her OWCP claim was denied. (*Id.* 27.) In December 2007, Defendant initiated Pay Adjustment Requests to recoup work hours erroneously paid to Plaintiff from July 23, 2007 to October 26, 2007. Plaintiff alleged the Department of Labor had authorized Continuation of Pay for that time frame. However, on October 24, 2007, Plaintiff's OWCP claim was denied. (*Id.* 38.) On January 23, 2008, an invoice was sent to Plaintiff in the amount of $9,504.44 for the hours paid for which she did not work. On February 26, 2008, a Notice of Determination of Debt was sent to Plaintiff in the amount of $9,504.44.

## Claim for Sexual Harassment

### Sexual Harassment

Plaintiff claims that she was sexually harassed in December 2002 when a subordinate employee called her and another supervisor "Bitches." (Doc. 2 at 24, 28.) Plaintiff did not file an EEO complaint with respect to this incident.

## EEO Claims

### Claim No. IG 753-0059-07

In April 2007, Plaintiff filed EEO complaint No. IG -753-0059-07, alleging that her health benefit insurance was wrongly cancelled. A settlement agreement was entered on this claim. (Def. App. 9-11.) The agency agreed to research and rectify Plaintiff's health benefits insurance issues. (*Id.*) On October 31, 2007, intending to complain that the settlement agreement had been breached, Plaintiff filed an appeal with the Commission with only a copy of her formal complaint in EEO No. IG-753-0059-07. On May 7, 2008, the Commission informed Plaintiff that her formal complaint should be filed with the agency's complaint processing center, not the Commission. On October 8, 2009, the Commission informed Plaintiff that her appeal was administratively closed.

The agency decided that there was no evidence that Plaintiff notified the agency of her breach of settlement claim as required by the EEOC regulations and denied Plaintiff's appeal. The Commission notified Plaintiff she had 90 calendar days to file a civil action. However, Plaintiff did not file a civil action.

### Claim No. IG-753-0079-07

On August 1, 2007, Plaintiff filed an EEO complaint alleging that she was discriminated against based on Mental Disability (Depression) and Hostile Work Environment. (Def. App. 14-17.)

She claimed this resulted from an on the job injury for which she was denied medical treatment, pay, overtime, and holiday pay. (*Id.*) She also claimed that she had been issued a Letter of Demand to Buy Back Leave. (*Id.*) The Counselor investigated, but was unable to resolve the matter informally. (*Id.* 12-13.) The Counselor notified Plaintiff of her option to pursue her complaint further through the EEO process. (*Id.*)

Plaintiff filed a formal EEO complaint with the Office of Federal Operations instead of with the agency. (*Id.* 19-25.) The complaint was forwarded to the agency and received on May 19, 2008, 226 days after Plaintiff received the notice of right to file a formal complaint and well beyond November 9, 2007, her last day to file. (*Id.*) The agency dismissed Plaintiff's complaint in IG-753-0079-07 as untimely. (*Id.*) Plaintiff did not appeal to federal court.

## Claim No. IG-753-0037-08

On January 21, 2008, Plaintiff initiated an EEO Counselor contact concerning her EEO complaint alleging employment discrimination. (*Id.* 2-8.) Efforts to resolve her complaints informally were unsuccessful, and on April 10, 2008, plaintiff filed a formal complaint in IG-753-0037-08. Plaintiff claimed Defendant discriminated against her based on the following allegations:

1.  On January 14, 2008 and February 15, 2008, Plaintiff received notices of debt determination for past insurance premiums as a result of reinstatement of her health insurance pursuant to a settlement agreement.

2.  On July 31, 2007, she was denied medical treatment and was forced to work in a hostile, unsafe, and hazardous environment; and

3.  Prior to August 2007, she was forced to work outside her restrictions.

The facts underlying Plaintiff's claims show that in 2004, the OWCP closed Plaintiff's OWCP claim, resulting in her health benefit insurance being cancelled. In April 2007, Plaintiff filed another EEO complaint alleging discrimination when she received a Letter of Demand and filed

another claim on August 16, 2007 alleging breach of a settlement agreement.  On September 5, 2007, a statement was sent to Plaintiff concerning two past due debts totaling $1,049.43.  On January 3, 2008, two Notices of Debt Determination were sent to Plaintiff concerning the same debts for unpaid health benefits.  When the error stopping Plaintiff's health benefits had been corrected pursuant to the settlement agreement with Management, it meant that Plaintiff owed the insurance premiums for the reinstated health coverage.

On August 24, 2007, Plaintiff filed an injury compensation claim and requested Continuation of Pay.  On August 31, 2007, the former Manager of Labor Relations sent a letter to Plaintiff notifying her that he had received her OWCP claim, that the claim was being controverted, and that Plaintiff would need to select the type of leave she wished to take.  On October 24, 2007, Plaintiff's OWCP claim was denied.  On December 18, 2007, the Senior Manager of Distribution Operations initiated Pay Adjustment Requests to recoup work hours erroneously paid to Plaintiff from July 23, 2007 to October 26, 2007.  On January 23, 2008, an invoice was sent to Plaintiff in the amount of $9,504.44 for the hours paid for which she did not work.  On February 26, 2008, a Notice of Determination of Debt was sent to Plaintiff in the amount of $9,504.44.

On May 15, 2008, the agency issued a partial dismissal, accepting Plaintiff's first claim for investigation.  Her second claim was dismissed as duplicative of those in IG-753-0079-07, and her third claim was dismissed because it raised issues that occurred prior to August 2007, more than 45 days before her first contact with an EEO counselor on January 21, 2008.  Following an investigation of the first claim, Plaintiff requested a hearing before an administrative judge ("AJ").

The AJ found that Plaintiff failed to establish a prima facie case, and that even if she had done so, she had failed to identify any material facts which would place in dispute the agency's

articulated nondiscriminatory reasons for its actions, or reasons which would demonstrate pretext. The AJ noted that letters of demand were also issued to 29 other employees in the same year. Plaintiff appealed the AJ's decision granting summary judgment on the first claim.

On appeal, the EEOC found that Plaintiff offered no persuasive arguments on appeal regarding the AJ's decision to issue a decision without a hearing, or regarding the AJ's findings on the merits. The EEOC affirmed the agency's final action concerning the first claim. The EEOC further found that the agency's partial dismissal of the second and third claims were proper and affirmed the partial dismissals. Plaintiff did not appeal to federal court.

**Claim No. IG-753-0005-09**

On November 19, 2008, the agency dismissed Plaintiff's formal EEO complaint No. IG-753-0005-09 (*Id*. 130-134.) In this case, Plaintiff alleged discrimination based upon OWCP's denial of her claim under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 81. The agency held it was clear that Plaintiff's complaint constituted a collateral attack on another forum's proceeding, the Department of Labor's Office of Workers' Compensation Program. The agency dismissed Plaintiff's formal complaint for failure to state a claim in accordance with 29 C.F.R. 1614.107(a)(1).

Additionally, the agency noted that Plaintiff had failed to initiate contact with an EEO counselor within 45 days of the matter alleged to be discriminatory, the claim that she was being denied income and wages because her FECA claim was denied in 2007. The agency dismissed Plaintiff's claim as being untimely brought to the attention of an EEO Counselor in accordance with 29 C.F.R. 1614.107(a)(2).

**Claim No. IG-753-0001-10**

Plaintiff had been on leave without pay for over a year when Defendant issued a notice of proposed removal. Plaintiff failed to appeal and contest her separation according to the instructions in the Notice of Separation. A Letter of Decision upholding the proposed removal was issued on June 22, 2009, with an effective date of September 18, 2009.

Plaintiff filed an EEO complaint, alleging Defendant discriminated against her by issuing the Notice of Proposed Removal, contending it was based on her sex (female), on her physical disability (head and hand), and on her mental disability (Post Traumatic Stress Disorder ("PTSD"), anxiety, and depression) and in retaliation for her prior EEO activity. (*Id.* 56.) According to the agency, Plaintiff failed to identify any conceivable accommodations. (*Id.*) Further, Plaintiff's health care professionals did not identify any accommodations which would have enabled Plaintiff to perform her essential job functions during the period at issue. (*Id.* ) Additionally, Plaintiff failed to establish a prima facie case of disparate treatment or retaliation. (*Id.*) Moreover, even, if she had established a prima facie case, the agency found management's explanation for its action to be legitimate and non-discriminatory. (*Id.*) The agency concluded that Plaintiff failed to show she was a "qualified individual" with a disability because according to medical reports, not only was Plaintiff unable to perform her job duties, she was totally incapacitated. (*Id.*) Plaintiff then filed this action.

### Medical Reports

#### November 2, 2007

Plaintiff began treatment with Dr. Gayle Smith-Blair, a psychiatrist, on November 2, 2007. Dr. Smith-Blair's diagnoses included PTSD, Major Depression, and Anxiety. (*Id.* 45.)

#### March 12, 2008

On March 12, 2008, a psychological evaluation was conducted by Robert Mandell, Ph.D., a psychologist.  Plaintiff was referred for medication management to Robert Schwartz M.D., and counseling therapy was to be provided by Larry G. Washington, a licensed clinical psychologist. Dr. Mandell diagnosed PTSD, Chronic, with psychotic features, paranoia and stated that Plaintiff urgently needed immediate psychiatric medication management and intervention to reduce her paranoid symptoms for her safety.  Dr. Mandell concluded that Plaintiff might need hospitalization for her safety because her paranoia extended to those who would prescribe and prepare psychotropic medication.  (*Id*. 48-53).

## May 28, 2008

Candace M. Martin, Clinical Psychologist, prepared a psychological report dated May 28, 2008.  This report gave no indication that Plaintiff would be able to work in the foreseeable future. (*Id*. 116-19.)  The psychologist reported:

> [Plaintiff] has Posttraumatic Stress Disorder, Chronic and Major Depressions, recurrent, severe . . . [She] needs immediate psychological intervention to reduce her depressive symptoms which in the past have led to the need for inpatient commitment.  She needs continued immediate treatment with Cognitive Therapy for reduction of PTSD symptoms before they become more severe.  Before she can return to work in any capacity, these issues need to be resolved.

(*Id*.)

## June 11, 2008

The psychologist's clinical note summary for June 11, 2008 indicated Plaintiff was extremely hypervigilant, had difficulty attending to the session, and had severely exaggerated startle response. The psychologist reported that Plaintiff's "chronic PTSD symptoms continue to have a disabling effect on her life."  (*Id*. 121.)

## July 3, 2008

The clinical psychologist noted:

[Plaintiff] is suffering from chronic PTSD and is severely depressed and anxious. [She] is hypervigilant with recurrent distressing recollections of her injury and makes great efforts to avoid thoughts and feelings associated with the event. She has outbursts of anger, difficulty concentrating and exaggerated startle response. She needs continued medical and psychological management. She is totally incapacitated and unable to perform any of her normal duties. She will remain off from work and be re-evaluated in three months.

(*Id*. 42.)

## October 29, 2008

The clinical psychologist reported:

[Plaintiff] has been in treatment at this office since February 27, 2008 and continues to be under my care for Post Traumatic Stress Disorder, Anxiety and Depression. [Plaintiff] needs continued medical and psychological management and has been compliant with this regimen. She is totally incapacitated and unable to perform any work duties. She will remain off from work and will be re-evaluated in three months.

(*Id*. 44.)

## May 28, 2009

Dr. Smith-Blair reported:

[Plaintiff] has been in treatment with me starting June 21, 2007 for diagnoses including Post Traumatic Stress Disorder, Major Depression, and Anxiety. She is being treated with medication and counseling for her conditions on a regular basis as an out-patient.

She continues to need psychiatric treatment and currently is not able to return to her previous work duties. She will continue to see me every 4-6 weeks for treatment and medication management to improve her functioning.

(*Id*. 45.)

## Notice of Proposed Separation

On June 22, 2009, Plaintiff was given written notice that Defendant proposed to separate her

from the US Postal Service for disability no sooner than 30 calendar days from her receipt of the

11

notice.  She was charged with failure to meet the requirements of her position, and separated pursuant to Part 365.34 of the Employee and Labor Relations Manual which provides that she may be separated due to disability and offered the opportunity to retire before officially being separated.  She was notified what to do if she was interested in the opportunity for disability retirement.  She was offered the opportunity to answer the notice either in person or in writing or by furnishing affidavits or other written materials which would be given considered before a written decision was rendered.  Plaintiff failed to respond.

**<u>Letter of Decision</u>**

Defendant found, after considering the evidence of record and Plaintiff's lack of response, that Plaintiff's separation from employment was necessary to promote the efficiency of the Service.  She was notified of Defendant's decision that she be removed from the Postal Service effective September 18, 2009.  The decision-maker considered Plaintiff's complete inability to perform in her position for over a year.  He decided her continued employment would impede the efficiency of the Postal Service.  He found the separation commensurate with the action taken in similar circumstances.  He also considered her tenure and the fact that her medical reports did not indicate any anticipation that Plaintiff would recover sufficiently to be able to participate in productive employment.  Defendant informed Plaintiff of her appeal rights.  Plaintiff did not appeal the decision.  Defendant also informed Plaintiff of her option of filing an EEO complaint with the Postal Service if she believed the action was based on discrimination.  Plaintiff filed an EEO Complaint, case No. IG-753-0001-10.

<b><u>ANALYSIS</u></b>

Plaintiff's Amended Complaint lists the following claims: Discrimination, Sexual

Harassment, Hostile Work Environment, Disparate Treatment, Constructive Discharge and Retaliation in violation of the Civil Rights Act of 1964, as amended, Title VII, 42 U.S.C. § 2000e, *et seq.*; Denial of Reasonable Accommodation of her disability in violation of the Rehabilitation Act ("RA") of 1973, as amended 29 U.S.C. § 701 *et seq.* and the ADA, 42 U.S.C. §§ 12101 *et seq.*; and tort claims, including claims of  Negligence and Intentional Infliction of Emotional Distress.  (Am. Compl., doc. 2.)

### Title VII Claims

Plaintiff alleges she was discriminated against on the basis of physical disability (PTSD, Major Depression, and Anxiety) and retaliated against for engaging in prior EEO activity by being subjected to an ongoing hostile work environment, denied pay and compensation, denied medical/health and FECA benefits, and denied other fringe benefits.  (Am. Compl., doc. 2 at 3.) Plaintiff's claims that she sustained injuries in a work place assault on March 21, 2001 when another employee pushed her to the floor.  She claims that thereafter, her preexisting injuries were aggravated by management's continual harassment of her.  After the March 21, 2001 assault (for which Plaintiff did not file an EEO claim), Plaintiff filed five EEO claims that are all allegedly related to the consequences of the assault (Nos. 1G-753-0059-07, 1G-753-0079-07, 1G-753-0037-08, 1G-753-0005-09, and IG-753-0001-10 ); however she did not file suit in federal court on the first four of these claims.  The factual and evidentiary insufficiency of claims IG-753-0059-07, IG-753-0079-07, IG-753-0037-08, and IG 753-0005-09 has already been determined in the administrative proceedings.  Accordingly, the administrative findings in the four earlier proceedings are final.  The Court finds that the earlier administrative cases are relevant only to Plaintiff's claim against Defendant for retaliation based upon prior EEO activity.

13

On April 21, 2010, Plaintiff filed suit in this Court in connection with the EEOC decision in No. IG-753-0001-10. (Compl., doc. 1.) Defendant contends that Plaintiff's claims in this case should be dismissed for failure to exhaust her administrative remedies. (Def. Br. at 15-17, doc. 29.)

### Failure to Exhaust Administrative Remedies

Plaintiff's Title VII claims in this action must be based solely upon claims she exhausted in her EEOC complaint No. IG-753-0001-10. Although Plaintiff alleges that she was physically attacked by a coworker on March 21, 2001, and was called a "Bitch" by another co-worker on December 18, 2002, Plaintiff did not file an EEO Complaint for either of these incidents. (Doc. 2 at 24, 28.)

Because Plaintiff is a federal employee, this action is governed by those provisions of Title VII of the Civil Rights Act of 1964, as amended, pertaining to employees of the United States government, 42 U.S.C. § 2000e-16. Title VII's provisions respecting federal employment include as "preconditions" to filing a civil action "rigorous administrative exhaustion requirements and time limitations." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832, 833 (1976). Because Plaintiff failed to exhaust her administrative remedies for incidents that occurred on March 21, 2001 and December 18, 2002, these two claims involving co-workers are not actionable. The Court finds that the District Court should dismiss Plaintiff's claims for the March 21, 2001 and December 18, 2002 incidents for Plaintiff's failure to exhaust her administrative remedies with respect to these claims.

Defendant contends that all of Plaintiff's claims in which she alleged discrimination based on sex, physical disability, and mental disability, as well as retaliation for prior EEO activity that she had allegedly exhausted in EEOC Case No. 1G-753-0001-10 should be dismissed because Plaintiff failed to exhaust her administrative remedies on those claims. Exhaustion requires that a

plaintiff comply with regulatory and judicially-imposed exhaustion requirements, including the requirement to pursue the administrative claim "with diligence and in good faith." *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir.1995). *See also Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir.1986) ("Good faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information is all that exhaustion requires.").

A complainant's failure to cooperate in the administrative process precludes a finding that the complainant has exhausted her administrative remedies when it prevents the agency from making a determination on the merits. *Johnson v. Bergland*, 614 F.2d 415, 417-18 (5th Cir.1980); *see Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997) (dismissal of claim upheld when claimant impeded administrative process by failing to attend hearings, return phone calls, or receive mail). If the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures, this Court should not reach the merits either. *See Johnson*, 614 F.2d at 418. Other circuits are in agreement with this rule. *See e.g., Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir.1993); *Tanious v. I.R.S.*, 915 F.2d 410, 411 (9th Cir.1990); *Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir.1983); *Jordan v. United States*, 522 F.2d 1128, 1132-33 (8th Cir.1975).

Plaintiff did not fail to exhaust her administrative remedies because, despite Plaintiff's failure to complete the required affidavit, the agency was able to examine her discrimination claims on the merits. *See Wilson v. Pena*, 79 F.3d 154, 165 (D.C.Cir. 1996) ("Thus, even if the plaintiff fails to make a good-faith attempt to comply with reasonable agency requests for information, the policy underlying the [exhaustion] doctrine is not served unless the default prevents the agency from acting on the merits of the complaint").

Plaintiff filed EEO complaint No. IG-753-0001-10, alleging Defendant discriminated against

her by issuing the notice of removal based on sex (female), physical disability (head, hand), mental disability (PTSD, anxiety, depression ) and retaliation for prior EEO activity.  On June 22, 2009, Defendant had issued a Letter of Decision upholding her removal, effective September 18, 2009. (*Id*. 56.)  Deciding the case on the merits, the agency ruled that Plaintiff had failed to show she was a "qualified individual" with a disability because according to medical reports, Plaintiff was unable to perform her job duties, or to work at all.  (*Id*.)  Moreover, the agency noted that Plaintiff had failed to identify any conceivable accommodations management could have made.  (*Id*.) Additionally, the agency found that Plaintiff's health care professionals had not identified any accommodations which would have enabled Plaintiff to perform her essential job functions during the period at issue. (*Id*.) The agency held that Plaintiff failed to establish a prima facie case of disparate treatment or retaliation.  (*Id*.)  Moreover, it concluded that even if she had done so, management had provided a legitimate and non-discriminatory explanation for its decision.  (*Id*.)

Although the agency had the right to dismiss Plaintiff's claim for failure to cooperate, it chose not to take this action.  When the agency is faced with the situation in which the complainant fails to respond to agency requests for additional information, it has  a choice.  The agency can dismiss the entire complaint if it has provided the complainant with a written request to provide relevant information and if the complainant has failed to respond to the request within 15 days of its receipt. 29 C.F.R. § 1614.107(a)(7).  The request must include a notice of the proposed dismissal. (*Id*.)  Alternatively, if sufficient information is available, the agency may adjudicate the complaint rather than dismissing it based upon the complainant's failure to cooperate.  *Id*.  If an agency reaches the merits of the case rather than dismissing the claim, the agency has determined that sufficient information exists for such an adjudication.  "If a complainant forces an agency to dismiss or cancel

the complaint by failing to provide sufficient information to enable the agency to investigate the claim, [she] may not file a judicial suit." *Wilson*, 79 F.3d at 164. "This procedure allows the agency itself to decide whether its mission has been frustrated by the default of the claimant." *Id.* If the agency has had this opportunity and has made a determination concerning discrimination, as it did in this case, the administrative process has not been obstructed. Rather, the administrative procedures have been exhausted. Accordingly, the District Court should deny Defendant's motion to dismiss for failure to exhaust administrative remedies and consider Plaintiff's claims raised in EEOC Case No. 1G-753-0001-10.

### TITLE VII, AMERICANS WITH DISABILITIES ACT, REHABILITATION ACT, DENIAL OF REASONABLE ACCOMMODATION

Plaintiff claims she was "subjected to harassment by agency management officials and co-workers that was **severe and pervasive enough to alter the conditions of her employment on an ongoing basis after experiencing workplace violence** that eventually culminated in the issuance of a Notice of Disability Separation." (Emphasis in original). (Am. Comp. at 3.) Plaintiff fails to state any facts in support of this conclusory allegation. As the Court previously noted, Plaintiff's complaint is not verified and does not constitute competent summary judgment evidence. She attaches to the amended complaint numerous unauthenticated supporting materials[2] in which she alleges a miscellaneous collection of annoyances such as complaints that her computer broke, that management gave her conflicting orders, that paint fumes bothered her, that she was forced to testify in the manager's office about the 2001 assault, that she was denied medical care by cancellation of her health insurance, and that she was forced to work outside her medical restrictions. This litany

---

[2] "Unauthenticated documents are improper as summary judgment evidence." *King*, 31 F.3d at 347 (citing *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991)).

of complaints includes allegations outside the relevant time period. It also includes allegations which were raised in her earlier EEO complaints. These earlier EEO claims may not be reconsidered in this case because the time period to file suit has expired. In response to Defendant's summary judgment motion, Plaintiff provides general conclusory allegations that she has presented evidence to support her claims. However, Plaintiff fails to "[cite] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials supporting her factual positions as required by FED. R. CIV. P. 56(c)(1)(A).

### Whether Plaintiff is a Qualified Individual with a Disability under the Americans with Disabilities Act and Rehabilitation Act and Whether Defendant Denied her Reasonable Accommodation

Plaintiff claims that by terminating her, Defendant violated the ADA and the RA. For purposes of the ADA, the term "disability," with respect to an individual, means (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff has made no allegations that she is substantially limited in any major life activity. However, it appears that Plaintiff is contending that her psychological condition renders her substantially limited in the major life activity of working. Working is one of the major life activities identified in regulations promulgated by the federal agencies charged with implementing the various titles of the ADA. A person is substantially limited from working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life

18

activity of working." 29 C.F.R. § 1630.2 (j)(3)(i); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995).

## Qualified Individual with a Disability

Defendant contends that Plaintiff cannot show that she meets the definition of a "qualified individual with a disability."  The ADA defines "a qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

The duties and responsibilities of Plaintiff's position, as described in Standard Position Description, consisted of supervising a medium sized group employees engaged in mail processing and distribution activities.  (Def. App. at 104.)  Her duties included scheduling and assigning work; determining work priorities; monitoring performance, resolving routine problems and recommending solutions, as well as meeting with the union to resolve disagreements.  (*Id.*)  Plaintiff has pointed to no competent summary judgment evidence which shows that she was capable of performing these duties.  Moreover, her doctors' reports showed she was unable to perform these job duties.  (*Id.* at 105.) For example one doctor stated, "[Plaintiff] is totally incapacitated and unable to perform any of her normal duties."  (Def. App. at 42, 44.)  Plaintiff's clinical psychologist, Dr. Candace M. Martin stated that Plaintiff's "thoughts were distorted and paranoid including thinking the Postal Service could poison her medicine."  (Def. App. at 119.)  Dr. Robert C. Schwartz, Jr. wrote: "The patient's presenting complaints included insomnia . . ., frequent awakening . . ., paranoia, excessive worry, and fearfulness about people at the post office."  (*Id.* at 46.)  Plaintiff refused to take prescribed medications because she believed the post office was tampering with the medications to

make her sick.  (*Id.* at 46, 117.)  She told Dr. Schwartz that she did not want to go back to work at the place she was assaulted in 2001 because, even if the one who assaulted her was not there, the postal service has hundreds employees just like her attacker, "spiteful people."  She told Dr. Schwartz that she had been working off and on because of the trauma that bothered her so much. Plaintiff believed people were blowing something out of her vent because they didn't want to recognize that she was assaulted.  (*Id.* at 46.)

The last time Plaintiff worked was in August 2007.  Denise Cameron had instructed her to return to her permanent location, the facility where the 2001 assault happened.  Ms. Cameron explained that when the District Reasonable Accommodation Committee received Plaintiff's medical documentation, she would be afforded another opportunity to be accommodated. Plaintiff acknowledged Cameron's instruction and asserted she was unable to report to the Dallas Plant or to supervise people due to her medical condition.  (Def. App. 114.)  She stated she was looking forward to returning to work in a position and environment where she could be productive.  She stated that she was enclosing a copy of her medical records and a PS Form 3971 requesting a continuation of pay due to her medical condition.  (*Id.*)  Plaintiff enclosed a copy of some medical reports including Dr. Martin's May 28, 2008 Psychological Report which included the clinical opinion that, "She needs immediate psychological intervention to reduce her depressive symptoms which in the past has led to the need for inpatient commitment.  She needs continued immediate treatment with Cognitive Therapy for reduction of PTSD symptoms before they become more severe.  Before she can return to work in any capacity, these issues need to be resolved."  (*Id.* 119.)


Plaintiff alleges that Defendant discriminated against her because of her disability due to the

fact that she was separated from her employment with Defendant for being on leave without pay for over a year. (*Id*. at 53, 56.) Plaintiff has failed to point to any competent summary judgment evidence to show that she was able to perform her job duties with or without reasonable accommodation. *See Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003). Reasonable accommodations may include making facilities accessible to individuals with disabilities, adjusting work policies, or reassignment to vacant positions. 42 U.S.C. § 12111(9). Plaintiff's latest medical report indicated that as of May 29, 2009, Plaintiff was under treatment for diagnoses including PTSD, major depression, and anxiety. It showed that Plaintiff required continued psychiatric treatment and was not currently able to return to her previous work duties. (*Id*. at 104.) None of Plaintiff's treating physicians indicated any work duties that Plaintiff was able to perform, or any work she could do with reasonable accommodations.

An employee who is unable to attend work when the essential functions of the job demand it is not a "qualified individual with a disability under the ADA." *Hypes on Behalf of Hypes v. First Commerce Corp*., 134 F.3d 721, 727 (5th Cir. 1998); *Rogers v. Int'l Marine Terminals, Inc*., 87 F.3d 755, 759 (5th Cir. 1996). "[A]n agency is inherently entitled to require an employee to be present during scheduled work times, and, unless an agency is notified in advance, an employee's absence is disruptive to the agency's efficient operation." *Law v. United States Postal Serv*., 852 F.2d 1278, 1279-80 (Fed. Cir. 1988).

Plaintiff's job as a supervisor of other employees requires both attendance and regularity. Because Plaintiff cannot attend work, she is not a "qualified individual under the ADA or the RA. It is apparent from Plaintiff's allegations that she believes Defendant is required to accommodate her by allowing her to be on leave indefinitely. The Fifth Circuit noted in *Rogers*:

> Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question . . . . *[R]easonable accommodation does not require an employer to wait indefinitely for [the employee's] medical conditions to be corrected. . . .*

*Rogers*, 87 F.3d at 759-60 (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)).

An employer may be required to reassign a disabled employee to a position for which the employee is otherwise qualified. *White v. York Int'l Corp.* 45 F.3d 357, 362 (10th Cir. 1995). In this case, Plaintiff originally contended she could not work at the site where the 2001 assault had occurred. Defendant transferred Plaintiff to a different location and she complained that under the new assignment, she was forced her to work in a hostile work environment. (Def. App. 113.) When Defendant transferred Plaintiff back to her original site so that it could investigate her hostile work environment claim, Plaintiff quit coming to work. (*Id.*) Plaintiff never identified a reasonable accommodation that would enable her to work. She never pointed to a job that she was able to perform or to a location where she could perform the job. Plaintiff admits in her Amended Complaint that she "is currently totally incapacitated and unable to work and has not been released to work by her treating Psychiatrist." (Am. Compl., doc. 2 at 4.) Accordingly, the District Court should grant Defendant's summary judgment motion on Plaintiff's claims of disability discrimination under Title VII and her claims that Defendant violated the ADA and the RA by terminating her employment.

## Constructive Discharge

Plaintiff claims she was constructively discharged when Mr. Gamble sent her the Notice of

Separation.  To the extent that Plaintiff asserts a claim for constructive discharge distinct from her

retaliation claims and based more broadly on her other claims of discriminatory treatment, it too is

without merit.  A plaintiff who voluntarily resigns may nonetheless establish an adverse employment

decision by showing that she was constructively discharged. *Barrow v. New Orleans SS Ass'n*, 10

F.3d 292, 297 (5th Cir. 1994).

 Constructive discharge occurs when an employer intentionally makes working conditions

so intolerable that a reasonable employee would feel compelled to resign.  *Id*.  A constructive

discharge claim turns on an objective analysis of whether a reasonable employee would have felt

compelled to resign.  *Id*.  The following factors may be considered:

  (1) demotion;
  (2) reduction in salary;
  (3) reduction in job responsibilities;
  (4) reassignment to menial or degrading work; and
  (5) badgering, harassment, or humiliation calculated to encourage resignation.

*Id*. (citing cases).  In order to succeed on a constructive discharge claim, a plaintiff must present

competent summary judgment evidence sufficient to demonstrate under an objective test that a

reasonable person would have viewed her working conditions as intolerable. *See Derr v. Gulf Oil

Corp.*, 796 F.2d 340, 343-44 (10th Cir. 1986).  The plaintiff's subjective view of the employment

environment and the employer's subjective intent with regard to discharging her are both irrelevant.

 *See id.*  "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult

or unpleasant working conditions are not so intolerable a to compel a reasonable person to resign."

*Carter v. Ball*, 33 F.3d 450. 459 (4th Cir. 1994).  If an employee resigns of her own free will, even

as a result of the employer's actions, that employee will not be held to have been constructively

discharged.  *See Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).

"Essentially, a plaintiff must show that she had 'no other choice but to quit.' " *Id.* (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992).

The Court concludes that Plaintiff has failed, as a matter of law, to show that she was constructively discharged. She did not resign. Rather, Defendant separated Plaintiff from employment involuntarily because she had not been released to work by her treating Psychiatrist and had been on leave without pay for over a year. Plaintiff's constructive discharge claim fails at the outset because she did not resign. Therefore, the District Court should grant Defendant's summary judgment motion on Plaintiff's constructive discharge claim.

### **Disparate Treatment-Disability and Sex Discrimination**

Plaintiff claims discrimination based upon her sex, female. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Section 703, 42 U.S.C. § 2000e-2(a)(1)(1964). Plaintiff also claims Defendant discriminated against her based upon her disability. However, Plaintiff has failed to present any evidence that she is a qualified individual with a disability under the Rehabilitation Act or the ADA. Accordingly, she is not a member of a protected class with respect to her disability discrimination claim, and the Court need consider only Plaintiff's sex discrimination claim.

A plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination for each basis upon which she alleges discrimination. *Furnco Construction Company v. Waters*, 438 U.S. 576, 567 (1978); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 -557 (5th Cir. 2007). Plaintiff can establish a prima facie case of unlawful disparate treatment by showing that she: (1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was

24

treated differently than similarly situated individuals who were not members of the protected group. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995.)

Once a plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. *Id.*

At this stage, a plaintiff may present evidence that the employer's reasons were a pretext for discrimination. Pretext involves more than a mistake. "The relevant inquiry is not whether the complaints made against [the complainant] were a pretext," but whether they were a pretext for prohibited discrimination. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 490 (5th Cir 2004). The complainant always carries the "ultimate burden of persuading the trier of fact that she has been the victim of intentional discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The ultimate burden of persuasion remains with the complainant at all times. *Reeves*, 530 U.S. at 143. *See Burdine*, 450 U.S. at 256.

Similarly situated employees or comparators are individuals whom, under "nearly identical circumstances" received preferential treatment in comparison to the plaintiff. *See, e.g., Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Courts can consider whether the plaintiff and the alleged comparator have the same supervisors, work in the same workplace division or office, have similar work responsibilities, or have similar histories in determining whether a comparator has "nearly identical circumstances." *See Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). In addition, if a claimant was subject to an

25

alleged adverse employment action "too remote in time" from the comparator's actions, the plaintiff and comparator are not similarly situated. Finally, "if the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee*, 574 F.3d at 260 *(quoting Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)) (emphasis added).  In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees whom he or she alleges were treated more favorably. Specifically, the Fifth Circuit has held for employees to be similarly situated those employees' circumstances, including their misconduct, must have been "nearly identical." *Perez v. Texas Dept. of Criminal Justice, Institutional Div*. 395 F.3d 206, 213 (5th Cir. 2004).

Plaintiff has met the first two requirements for a prima facie case.  She is a member of a protected class based upon her sex, female, and she was subjected to an adverse employment action, separation from employment.  The Court will now consider whether Plaintiff has satisfied the third requirement of a prima facie case, that she was treated less favorably than similarly situated individuals outside her protected class.  In support of this element, Plaintiff identified the following six comparators: Melva Howard, Supervisor, Dallas Plant; Barbara Tatum, Supervisor, Dallas Plant; Winston Johnson, Supervisor, Dallas Plant; Louise McCowan, Supervisor, Dallas Plant; Eddie Castillo, Supervisor (Dallas Plant); and Tony Drexler, supervisor, EAS-17, Northhaven Station. These comparators do not support the complainant's claim.  At least three of the comparators appear from their names to be within Plaintiff's protected class of sex, female.  Even assuming that the

comparators were all outside the complainant's protected class, Plaintiff fails to establish that their comparative situations were virtually identical to hers, and she also fails to show how they were treated more favorably.  In particular, Plaintiff has not presented competent summary judgment evidence to show that the management officials responsible for her separation (Mr. Gamble, Plaintiff's first-line supervisor, and Mr. Melendrez, Senior Manager, Distribution Operations) had anything to do with her comparators' situations.

Mr. Gamble, who triggered Plaintiff's separation process, specifically testified that he is not aware of any employees who had failed to meet the requirements of their position but were not issued a Notice of Separation.  He also testified that he did not know the comparators. (Def. App. at 64 - 72.)  Mr. Melendrez, who issued the Notice of Decision, also testified that he did not know of any employees who had failed to meet the requirements of their position but were not issued a Notice of Separation and that he did not know the comparators.  (Def. App. at 73 -76.)

Although Plaintiff is not limited to presenting comparative evidence to establish a prima facie case of disparate treatment discrimination, she needs to set forth some evidence of acts from which, if otherwise unexplained, an inference of discrimination can be drawn.  *Furnco*, 438 U.S. at 576.   Although Plaintiff claims in her response to Defendant's summary judgment motion and in her surreply that she has supported her allegations with evidence, she fails to "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers" or other competent summary judgment evidence. *See* Fed. R. Civ. P. 56 (c)(1)(A).  Plaintiff has not presented any other evidence that affords a sufficient basis from which to draw an inference of discrimination.

### Retaliation

27

Plaintiff also argues that Defendant retaliated against her for prior protected activity.  In order to make a prima facie case for retaliation, the plaintiff must prove that: (1) she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and the adverse action.  *Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir.1996); *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1092 (5th Cir.1995); *Collins v. Baptist Mem. Geriatric Center*, 937 F.2d 190, 193 (5th Cir. 1991).  The burden is on the employee to show that "but for" the protected activity, she would not have been subjected to the adverse employment action.  *Collins*, 937 F.2d at 192.

In this case, Plaintiff satisfies the first element of her prima facie case because she filed four EEO complaints before her separation from employment.  As to the second element, Mr. Melendrez who issued the final decision had no knowledge of Plaintiff's prior EEO activities. (Def. App. at 75.) However, Mr. Gamble, Plaintiff's first-line supervisor, was aware that Plaintiff had prior EEO activity because Plaintiff had named him as a party in a complaint two years before.  (Def. App. at 65.)  Plaintiff thus met the second element of a prima facie case.  Because Plaintiff was subjected to an adverse employment action based on her separation, Plaintiff met the third requirement of a prima facie case.  The fourth element, a nexus between the complainant's prior EEO activity and the separation, can be inferred if the proximity between the protected activity and the adverse treatment is very close in time.  However, a three month gap between the protected activity and the adverse treatment is not sufficient to establish a causal connection.  In this case, all of Plaintiff's EEO activities took place three months or more before the issuance of Plaintiff's proposed

separation letter on June 22, 2009.  Thus the temporal relationship is too remote to support an inference of retaliation.  Similarly, Plaintiff's disparate treatment analysis does not establish that she was treated less favorably than similarly situated individuals.  Plaintiff fails to state a prima facie case of retaliation.

### Pretext

Even if the Court were to assume that Plaintiff had established a prima facie case of discrimination based on sex, disability, or retaliation, which she has not done, Defendant has articulated a legitimate nondiscriminatory explanation for its actions.  Mr. Melendrez explained that he sustained Mr. Gamble's separation proposal because Plaintiff had been on leave without pay status for more than one year, and she had not timely respond to the proposed action.  Mr. Melendrez also explained that Plaintiff's separation was necessary to promote the efficiency of the Postal Service and that Plaintiff's sex, disability, and prior EEO activity were not factors in his decision to separate Plaintiff from the Postal Service.

Mr. Gamble explained that he proposed Plaintiff's removal on June 22, 2009 because she had been absent since April 25, 2007; she had been in a leave without pay status since April 23, 2008; she could no longer perform the duties of her position; and management had no reason to believe that she would be returning to her position at any time in the near future.   He noted that she could not perform any of her duties as a Supervisor of Distribution Operations nor could she supervise employees.  According to Mr. Gamble, the separation was based on § 365.34 of the Employee and Labor Relations Manual.  (Def. App. 57.)  He gave Plaintiff ten days to appeal the proposed removal to Mr. Melendrez.  Mr. Gamble was not involved in issuing the Letter of Decision, but he said that Plaintiff's sex, disability and prior EEO activity were not factors in her

29

separation.

Section 365.342(a) of the Employee and Labor Relations Manual states in pertinent part: "At the expiration of 1 year of continuous absence without pay, an employee who has been absent because of illness may be separated for disability."   (Def. App. 62.)   The Court finds that management has given legitimate and non-discriminatory explanations for Plaintiff's separation from employment.   Plaintiff has not raised a genuine issue of material fact showing that management's reasons are not legitimate and are discrimination.   "[M]ere assertions" and conclusory allegations" are not sufficient to make pretext question of fact for trial.  *Steckl v. Motorola*, 703 F.2d 392,393 (9th Cir. 1983).  A complainant's subjective beliefs cannot be probative evidence of pretext, and therefore cannot be the basis for judicial relief.  *Elliott v. Group Medical & Surgical Servs*., 714 F.2d 556, 557 (5th Cir. 1983).  Plaintiff's claims of discrimination are based entirely on speculation and subjective belief.  Plaintiff has not offered any competent summary judgment evidence to show that management's reasons were a pretext for prohibited discrimination.  *See Pineda*, 360 F.3d at 490.  Defendant is entitled to summary judgment on all of Plaintiff's claims of discrimination.

## **Plaintiff's Tort Claims**

In her Amended Complaint, Plaintiff claims damages and punitive damages based upon allegations of Defendant's gross negligence (doc. 2 at 2), deceptive practices, bad faith dealing, (doc. 2 at 6), negligence, and intentional infliction of severe emotional distress (doc. 2 at 8).

The FECA provides the exclusive remedy for federal employee's personal injury during federal employment.  5 U.S.C. § 8116(c).  Plaintiff does not allege that she filed a FECA claim for her allegations of Defendant's gross negligence, deceptive practices, bad faith dealing, negligence, or intention infliction of emotional distress.  District courts lack subject matter jurisdiction to review

Department of Labor decisions on workmen compensation claims under the FECA. "In enacting [the FECA], Congress adopted the principal compromise . . . commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the government." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983). The FECA precludes judicial review of a federal employee's compensation claims. 5 U.S.C. § 8128(b). *See also Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81 (1991) (The "FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary's determination of FECA coverage").

Usually, to obtain relief for tortuous conduct by the United States a plaintiff must comply with the requirements of the Federal Tort Claims Act ("FTCA"). However, both Title VII and the FECA preempt actions under the FTCA. The Supreme Court held in *Brown v. GSA*, 425 U.S. 820, 825 (1976), that Congress intended for Title VII to be the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination," *Id*. at 829. Thus Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment. *Id* at 835. The FECA, rather than the FTCA, provides the exclusive remedy for a federal employee's personal injury claims during her federal employment. 5 U.S.C. § 8116(c). Because the the FECA is an "exclusive" remedy, it deprives federal courts of subject-matter jurisdiction to adjudicate claims brought under the FTCA for workplace injuries that are covered by the FECA. *Mathirampuzha v. Potter,* 548 F.3d 70, 81 (2nd Cir. 2008). The Supreme Court has held:

> [The] FECA's exclusive liability provision . . . was designed to protect the

> Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise —the "quid pro quo"— commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

*Lockheed*, 460 U.S. at 193–94. The Fifth Circuit Court of Appeals has considered a plaintiff's claim in light of FECA coverage and the limitations that the FECA places on a claimant's right to sue the Government in tort for personal injuries. *Bennett v. Bennett*, 210 F.3d 272 (5th Cir.2000). Bennett, a postal worker, asserted a claim under the FTCA for intentional infliction of emotional distress, assault, battery and false imprisonment when her supervisor had to forcibly remove Bennett from an interview room against her will during the interview of another postal worker. *Id.* at 274. The court noted that an employee may not bring FTCA claims that arise out of the federal employment relationship until she has submitted the claim to the Secretary of Labor for a determination of FECA coverage. *Id.* at 277. *See also Brown v. United States*, No. 3:97-CV-0159-P, 2002 WL 226333, *3 (N.D. Tex. Feb. 13, 2002). A split of authority exists between courts with respect to whether the tort of intentional infliction of emotional distress is covered under the FECA. *See Bennett*, 210 F.3d at 272. Plaintiff did not submit to the Secretary of Labor her tort claims against Defendant, and the Court finds that a substantial question exists as to whether Plaintiff's tort claims were pre-empted by the FECA. The answer to that question can only be determined by the Secretary of Labor. Plaintiff's tort claims should be dismissed without prejudice.

## Conclusion

Plaintiff has not shown a factual or an evidentiary basis for her allegations. Thus, she has failed to meet her burden of establishing a prima facie case of Discrimination, Sexual Harassment,

Hostile Work Environment, Disparate Treatment, Constructive Discharge, Retaliation, or Denial of Reasonable Accommodation of Disability under Title VII, the ADA, and the RA.  Further, the District Court lacks subject matter jurisdiction to consider Plaintiff's tort claims.

### Recommendation

The Court recommends that the District Court **GRANT** Defendant's Motion for Summary Judgment on Plaintiff's claims pursuant to Title VII, the R.A., and the ADA and dismiss without prejudice Plaintiff's tort claims.

**So Recommended**, September 23, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen (14) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

34